```
            IN THE UNITED STATES DISTRICT COURT
                WESTERN DISTRICT OF ARKANSAS
                    FAYETTEVILLE DIVISION

SHARON MCDANIEL                                        PLAINTIFF

     vs.                  CASE No. 08-5066

THE GATES CORPORATION d/b/a TGRC GATES
CORPORATION and d/b/a THE GATES RUBBER COMPANY         DEFENDANT
```

**O R D E R**

NOW on this 21st day of January 2009, the above referenced matter comes on for consideration of **Defendant's Motion for Summary Judgment** (document #10), and the Court, being well and sufficiently advised, finds and orders as follows:

1. The plaintiff, Sharon McDaniel, brings this action under the Family Medical Leave Act, 29 U.S.C. § 2601 et seq. ("FMLA"). McDaniel argues that the defendant, The Gates Corporation d/b/a TGRC Gates Corporation and d/b/a The Gates Rubber Company (hereinafter "Gates"), terminated her in violation of the FMLA. Gates denies the plaintiff's allegations.

2. Before the Court is defendant's motion for summary judgment, in which it asks that the Court grant it summary judgment dismissing plaintiff's FMLA claim. Alternatively, the defendant seeks partial summary judgment with respect to the plaintiff's entitlement to back pay.

The plaintiff opposes defendant's motion.

3. Summary judgment is appropriate only if, when viewing the facts in the light most favorable to the plaintiff and giving her the benefit of all reasonable factual inferences, there is no genuine issue of material fact and the moving party is entitled to

1

judgment as a matter of law.  See Leichihman v. Pickwick Int'l, 814 F.2d 1263, 1268 (8th Cir.), cert. denied, 484 U.S. 855 (1987). Summary judgments should be sparingly used in employment discrimination cases and then only in those rare instances where there is no dispute of fact and where there exists only one conclusion.  All the evidence must point one way and be susceptible of no reasonable inferences sustaining the position of the non-moving party.  See Johnson v. Minnesota Historical Soc., 931 F.2d 1239, 1244 (8th Cir. 1991).

    4.   For the purpose of considering the defendant's motion and based upon the pleadings submitted by the parties, the Court believes the following material undisputed facts appear:

* Gates makes automotive and industrial belts at its factory in Siloam Springs, Arkansas.

* Sharon McDaniel began working for Gates in August of 1989.

* McDaniel was employed with Gates as a Grinder/Packer at the Siloam Springs facility.

* McDaniel worked continuously for Gates until her termination on November 19, 2007.

* At the time of McDaniel's termination, she worked twelve (12) hour shifts from 6:00 a.m. to 6:00 p.m.

* McDaniel's facilitator, or direct supervisor, during 2007 was Keith Cox.

* During McDaniel's employment with Gates, she received the Associate Handbook, which contained Gates' policies and procedures, including Gates' attendance policy.

* During McDaniel's employment with Gates, the required

attendance goal for employees was 98.5%.

   *   McDaniel was aware of Gates' attendance goal and that she would be disciplined if she fell below that goal.

   *   McDaniel was also aware of Gates' sick leave policy and that sick leave would count against an employee's attendance percentage.

   *   According to Jesse VanPool, the Human Resources Manager for Gates during 2007, absences attributable to FMLA did not count against an employee's attendance percentage.

   *   Throughout her employment with Gates, McDaniel was issued several warnings about her attendance violations.

   *   McDaniel also received several prior "records of performance", which were disciplinary measures documenting McDaniel's attendance problems.

   *   On December 13, 2005, McDaniel received a "record of performance" advising her that she had fallen below the required 98.5% attendance level.

   *   On September 5, 3006, McDaniel received another "record of performance" because her attendance fell below 98.5%.

   *   McDaniel understood that if she missed any additional time at work before bringing her attendance back to the 98.5% standard she would be placed on a one-year commitment.

   *   On or about August 10, 2007, McDaniel was placed on a one-year commitment for attendance issues.

   *   The "record of performance" dated August 10, 2007 stated the following regarding the one-year commitment:

   During this commitment, the associate cannot miss more
   than 28 hours.  Regular attendance is expected of
   everyone.  It is necessary in order for us to deliver

      products on time to our customers. If Sharon McDaniel does not meet this commitment by exceeding the number of "unexcused" hours, [her] employment will be terminated.

\* After being placed on the one-year commitment, in October of 2007, McDaniel missed 12 hours and received another "record of performance".

\* McDaniel was advised that she could not miss more than 16 hours to meet her commitment.

\* McDaniel was absent for six (6) hours on November 2, 2007.

\* Before leaving work on November 2, 2007, McDaniel informed her facilitator, Keith Cox, that she had a doctor's appointment and would be leaving at noon.

\* McDaniel missed all of her twelve (12) hour shift on November 3, 2007.

\* McDaniel called into Gates on November 3, 2007 to let them know she would be out.

\* McDaniel called into Gates on November 4, 2007 to let them know she was still sick.

\* McDaniel returned to work on November 7, 2007.

\* After returning to work, McDaniel met with VanPool concerning her attendance.

\* VanPool told McDaniel that he needed to know if any of the absences might be covered under FMLA, provided her with a list of her missed work dates, and requested that McDaniel bring him any medical documentation she had for any of the absences.

\* McDaniel was placed on unpaid leave while she had an opportunity to submit medical documentation.

\* On or about November 9, 2007, McDaniel brought her

4

handwritten notes to VanPool concerning the dates in question.

* VanPool called McDaniel and informed her that she would need medical certifications for the dates in question.

* On November 15, 2007, McDaniel provided a medical certification to Gates.

* Some time after November 7, 2007 but before her termination, McDaniel also provided to Gates two doctor's notes, dated November 6, 2007 and November 8, 2007.

* McDaniel was terminated on November 19, 2007.

* McDaniel appealed her termination pursuant to Gates' Peer Review process.

* The Peer Review Panel upheld McDaniel's termination.

* McDaniel is currently employed as a part-time janitor at the Highfill Airport, making $14.25 an hour. She works approximately twelve (12) hours per week.

* McDaniel also attends college.

* McDaniel has not applied for any other employment.

* McDaniel was not employed between the date of her termination in November of 2007 and April 28, 2008.

5. In its motion, Gates argues that summary judgment should be granted with respect to plaintiff's FMLA claim for two reasons:

* that McDaniel's bronchitis was not a serious health condition; and,

* that McDaniel did not put Gates on notice that her absences were due to a serious health condition.

6. McDaniel argues that she was terminated for absences which qualified for protection under the FMLA. Specifically at issue are McDaniel's absences of six (6) hours on November 2, 2007

and twelve (12) hours on November 3, 2007.  McDaniel asserts that during those days she was suffering from bronchitis, and that her condition qualified as a serious health condition under the FMLA.

7.  An eligible employee is entitled to leave under the FMLA if she has a "serious health condition" that makes her unable to perform the functions of her job.  29 U.S.C. § 2612(a)(1)(D); 29 C.F.R. § 825.100.  A serious health condition is defined as "an illness, injury, impairment, or physical or mental condition that involves inpatient care in a hospital, hospice, or residential medical care facility; or continuing treatment by a health care provider."  29 U.S.C. 2611(11).  At issue in this case is whether McDaniel's condition required "continuing treatment by a health care provider."

According to the Eighth Circuit's interpretation of the "continuing treatment" standard and the regulations implementing that standard, the following three elements must be met:

> '(1) that [the employee] had a period of incapacity requiring absence from work, (2) that this period of incapacity exceeded three days, and (3) that [the employee] received continuing treatment by a health care provider within the period.'

Hovind v. Bristol Place Corp., 2008 WL 4717476 (D.Minn. Oct. 24, 2008)(quoting Rankin v. Seagate Techs., Inc., 246 F.3d 1145, 1148 (8th Cir. 2001)(quotations omitted)).  Further, "the fact that an employee is sufficiently ill to see a physician two times in a period of just a few days is all that FMLA requires for 'continuing treatment.'" Rankin, 246 F.3d at 1149.

8.  Gates asserts that McDaniel cannot show that the bronchitis she allegedly suffered from on November 2 and 3 was a chronic condition under the FMLA -- contending that McDaniel failed

to provide any medical documentation to show that the bronchitis "continued over an extended period of time;" or "required periodic visits for treatment by a health care provider . . . ." 29 C.F.R. § 825.114(a)(2)(iii)(A-B). Gates further argues that the documentation provided by McDaniel is not specific to the dates at issue and fails to state McDaniel's condition on the dates at issue as bronchitis.

In response, McDaniel points to the medical certification and doctors' notes and records that she provided to Gates as a basis for her contention that there is sufficient evidence that she suffered a "serious health condition" and that she put Gates on notice concerning the same. Specifically, she points to the medical certification -- signed by Nancy L. Jones, M.D. on November 15, 2007 -- which describes the "medical facts which support your certification" as "bronchitis was seen twice in clinic and given antibiotics and injections".

A review of this particular document reveals that, although the medical certification does not include the dates of November 2 and 3, it does state the condition as having commenced "11-07". The Court also notes that, in addition to the medical certification, McDaniel also provided to Gates a "certificate to return to work" -- signed by Nancy L. Jones, M.D. -- which mentions, *inter alia*, that McDaniel was "out of work 11/3 & 11/4". While this particular document does not mention 11/2, it would appear possible that if McDaniel is entitled to FMLA leave for her twelve (12) hour 11/3 absence, she may not have been in violation of her one-year commitment. Further, the Court notes that medical records do indicate repeated office visits by McDaniel for

bronchitis -- on dates including 11/2/07, 11/6/07, 10/8/07, and 3/19/07.

It appears to the Court that the actual medical records were not provided to Gates until the discovery phase of this litigation. Nevertheless, they are now before the Court and cannot be disregarded because

> [a]n employer does not avoid liability by discharging an employee who takes leave in order to seek treatment for a condition that is later held to be covered by the FMLA. The employer who precipitously fires an employee, when the latter claims the benefits of leave under FMLA, bears the risk that the health condition in question later develops into a serious health condition within the meaning of 29 C.F.R. § 825.114(a).

Caldwell v. Holland of Texas, Inc. 208 F.3d 671, 677 (8th Cir. 2000).

Therefore, based on the evidence presented, the Court finds that questions of fact remain concerning whether McDaniel's condition qualifies as a "serious health condition" under the FMLA.

9. Gates also argues that McDaniel failed to put Gates on notice that her absences were due to a serious health condition.

In the Eighth Circuit case of Rask v. Fresenius Medical Care North America, 509 F.3d 466 (8th Cir. 2007), the Court noted that, although the statutory text of the FMLA does not specify what kind of notice employees are required to give of their intent to take FMLA leave when the need for leave is unforeseeable, the relevant regulations provide some guidance -- "Notice must be given 'as soon as practicable,' but 'the employee

need not explicitly assert rights under the FMLA or even mention the FMLA' to require the employer to determine whether leave would be covered by the FMLA." Rask, 509 F.3d at 471 (quoting 29 C.F.R. § 825.303(a),(b)). "'[T]he employer's duties are triggered when the employee provides enough information to put the employer on notice that the employee may be in need of FMLA leave.'" Rask, 509 F.3d at 471 (quoting Browning v. Liberty Mut. Ins. Co., 178 F.3d 1043, 1049 (8th Cir. 1999)).

Here, it appears to be without dispute:

*   that, on 11/2/07, McDaniel notified her supervisor that she would be leaving at noon for a doctor's appointment;

*   that McDaniel called Gates on both 11/3/07 and 11/4/07 to notify her employer that she was still sick;

*   that on 11/7/07 -- her first day back at work -- McDaniel was asked by the Director of Human Resources to provide any information to determine if her missed days could qualify for FMLA;

*   that on or about 11/15/07, McDaniel provided a medical certification signed by her doctor;

*   that McDaniel also provided doctor notes which mentioned her 11/3/07 absence; and

*   that McDaniel was terminated on 11/19/07.

It is required that "[t]he employer must be made aware that the absence is due to a serious illness so the employer can

9

distinguish it from ordinary 'sick-days,' or even malingering . . ." (Rask, 509 F.3d at 472). In the Court's view, the medical certification (which, as already noted, was completed by McDaniel's doctor and noted the "absence plus treatment" option under the definition of "serious health condition"), when viewed in the light most favorable to the plaintiff, is sufficient to create a question of fact as to whether McDaniel failed to put Gates on notice that her absences were due to a serious health condition.

10. Gates alternatively argues that partial summary judgment should be granted with respect to McDaniel's entitlement to back pay on the basis of its contention that McDaniel has not been reasonably diligent in locating suitable employment and has failed to mitigate her damages.

Applicable law requires a plaintiff to exercise reasonable diligence under the circumstances to minimize her damages and she cannot recover "for any item of damage which could have been avoided." Ford Motor Co. v. E.E.O.C., 458 U.S. 219, 231 (1982).

There appears to be no dispute that McDaniel was not employed from the date of her termination in November of 2007 to April 28, 2008, nor is it disputed that McDaniel is now employed in a part-time capacity as a janitor at the Highfill Airport, making $14.25 an hour approximately twelve (12) hours a week. It also appears that -- other than the job she currently holds at

the Highfill Airport -- McDaniel has not applied for any other job since her termination.

Notwithstanding the foregoing, the Court notes that failure to mitigate is an affirmative defense concerning which the defendant has the burden of proof.  Hegler v. Board of Education, 447 F.2d 1078, 1081 (8th Cir. 1971) [The overwhelming authority places the burden on the wrongdoer to produce evidence showing what the appellant could have earned to mitigate damages (citations omitted) . . . The defendant-appellee has to show not only that the plaintiff-appellant failed to use reasonable care and diligence, but that there were jobs available which appellant could have discovered and for which she was qualified.]  In this case, there is now before the Court no evidence concerning McDaniel's rate of pay during her employment; concerning what jobs might have been available which McDaniel was qualified to perform and which she might have discovered; or concerning what she might have earned had she discovered and obtained other employment which might have been available to her.  The Court, therefore, finds unresolved issues of fact remain with respect to the affirmative defense of failure to mitigate damages and will deny Gates' motion for partial summary judgment on the same.

10.  For the reasons set forth above, the Court finds that Gates' motion for summary judgment, and alternative motion for partial summary judgment, should both be denied.

**IT IS THEREFORE ORDERED** that **Defendant's Motion for Summary Judgment** (document #10) is **denied.**

**IT IS SO ORDERED.**

/S/JIMM LARRY HENDREN
JIMM LARRY HENDREN
UNITED STATES DISTRICT JUDGE